RICHARD M. ZELMA
Richard M. Zelma, Pro Se
940 Blanch Avenue
Norwood, New Jersey 07648
Tel. No: 201 767 8153
TCPALAW@OPTONLINE.NET

| | |
|---|---|
| RICHARD M. ZELMA<br>Plaintiff,<br><br>vs.<br><br>ART CONWAY (Individually),<br>DIALAMERICA MARKETING INC.,<br>RODALE INC., a/k/a RODALE<br>PRESS, d/b/a PREVENTION<br>MAGAZINE, PREVENTION MAGAZINE,<br>JOHN DOES (1-5) and ABC<br>CORPORATIONS (1-5), each<br>acting individually, in<br>concert, or as a group,<br>Defendants. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br><br>Civil Action No.: 2:12-cv-00256<br>(DMC)(JAD)<br><br><br><br>RETURN DATE:<br>MARCH 5, 2012 |

---

PLAINTIFF, RICHARD M. ZELMA'S BRIEF IN
OPPOSITION TO DEFENDANTS' ARTHUR CONWAY
AND DIALAMERICA MARKETING, INC.'S MOTION
TO DISMISS PLAINTIFFS COMPLAINT AND IN
OPPOSITION TO THE MOTION IN JOINDER TO
DISMISS WITH DEFENDANTS RODALE INC., a/k/a
RODALE PRESS, d/b/a PREVENTION MAGAZINE,
HEREINAFTER COLLECTIVELY, "DEFENDANTS'",
PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

**Richard M. Zelma,** *pro se*
**On the Brief**

## INTRODUCTION

This suit is based on the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227; "the TCPA") and its underlying regulations. Plaintiff contends that Defendants conspired with each other in an effort to solicit Plaintiff's wife encouraging her to renew a subscription to Prevention Magazine. As further set out below, these calls resulted in harassment and annoyance to Plaintiffs household.

The Complaint alleges violations of the do-not-call provisions of the TCPA as well as the proscriptions defined within the New Jersey no-call-law. (NJSA §56:8-119 et seq) Unlike the deceitful description incorporated within the defenses Motion, replete with references to a "single call", "one call" or "a legal phone call", (in the singular), Plaintiff received at minimum, seven (7) calls from the defendants, referenced throughout his complaint as such. There were more than two calls within a 12 month period initiated by Defendants Arthur Conway ("Conway") and DialAmerica Marketing Inc. ("DialAmerica") made on behalf of Defendant Rodale Inc. d/b/a Prevention Magazine ("Prevention") that violated the TCPA as well as the New Jersey no-call-law. Plaintiff has stated a cause of action under 47 U.S.C. §§227(b)(3)(B)&(c)(5).

Plaintiff vigorously opposes Defendants' Motion to Dismiss where they allege a Failure to State a Claim and challenge their supporting memorandum ("The Motion").

These arguments are also speculative, largely based on conjecture yet to be tested in discovery and therefore not properly presented in a motion at this stage of the proceedings.

In deciding whether to grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine "whether

2

the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." *E. Shore Mkt. Inc. v. J.D. Assoc. Ltd P'ship*, 213 F. 3d 175, 180 (4th Cir. 2000). The court must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the Plaintiff. **Id.**

The court should not dismiss a complaint for failure to state a claim, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*. 355 U.S. 41, 45-46 (1957).

Plaintiff contends the allegations within his complaint can and will be supported through extensive Discovery along with claims that were properly pled. The argument is also premature since Plaintiff has not had an opportunity to obtain such discovery from the Defendants on the very facts they rely upon in their Motion at this point.

Defendants Motion is riddled with counsel's conclusions of law that are not only misguided, they are factually unsupported, inappropriate, inaccurate and false. Moreover, it appears to be the defenses attempt to promote "creative" interpretations of otherwise well-intentioned law.

The defendants claim Plaintiff's wife is a current subscriber to Prevention Magazine. They claim the purpose of the call[s] was/were to inquire whether Plaintiff's wife wanted to renew her Prevention Magazine subscription. Their claim is patently false. The defendants call was made to a residential phone line, soliciting a subscription renewal to Prevention magazine where Plaintiffs household has no records showing any payment to Prevention or Rodale! If Defendant Prevention Magazine and/or Rodale Inc. claim a signed contract exists directly between them and Plaintiffs wife, they must prove it.

3

Defendants assert DialAmerica never spoke to Plaintiff's wife and only spoke to Plaintiff once, which is accurate. However, Plaintiff's wife <u>was</u> <u>present</u> during the live call and did not want to speak with the defendants.

Likewise, the defendants' Motion is silent as to their first six (6) abandoned calls, as they intensified their efforts to call Plaintiffs home, and "make the sale." Plaintiff was forced to answer those abandoned calls which failed to meet the "abandoned call requirement". 47 <u>C.F.R.</u> §64.1200 (a)(6)(i)

Had Plaintiffs wife wanted to receive any call[s] about the subscription, she would have given the defendants *her* phone number, but she did not. Defendants purposely initiated calls to Plaintiff's subscribed phone number which was never provided to either of them.

The Defendants loosely imply their calls were legal, devoid of any substantive fact or legal basis. Disparagingly, they apply a nebulous assertion apparently as a defense, where Plaintiff having a history as a consumer privacy advocate, should not be permitted to file these suits.

There is nothing stipulated in the TCPA (or related statutes) that precludes a consumer, destined to be a serial victim, from taking legal action against the next violator after he deals with the previous. Conversely, there is nothing in the TCPA or related statutes that give the Defendants the right to be serial violators!

Defendants claim an exception exists to both the federal and New Jersey Do-Not-Call ("DNC") lists for existing customers. Here again, the Defendants demonstrate a lack of knowledge about the very laws designed to protect our privacy.

The Defendants claim they were not informed how any business relationship was severed. [Def. Mtn. Preliminary Statement, Pg. 1]

4

Lastly, defendants' imply Plaintiff's lawsuit was improperly based upon legal telephone activity. Here again, the defendants are ill informed as to what constitutes a "legal" telemarketing solicitation.

These questions will be explored throughout this brief. For the foregoing reasons and those that follow, it is respectfully requested that the Defendants Motion be Denied.

### STATEMENT OF FACTS

Plaintiff's telephone number was registered with both the New Jersey and federal no-call lists. [Pltf's Complt. at ¶¶44-45] Plaintiff was called at least seven times by Defendant DialAmerica between November 9 and November 19, 2011. [Complt. at ¶19]

As Discovery commences, Plaintiff will demonstrate where Defendants call records evidence the number of calls in dispute, perhaps even more.

With every call received from the Defendants, Caller ID displayed [201] 257-4065, a number one would think was initiated and originated from New Jersey. The willful misuse of that number falls within a violation of the "Truth in Caller ID Act of 2010." Each time Plaintiff called [201] 257-4065, he reached either a "busy signal" or just dead air, thus being unable to stop the repeated unwanted calls. The calls associated with this spoofed number were later found to have actually originated from Omaha Nebraska. [Complt. at ¶38]

Every call to date, initiated to Plaintiffs home number by the Defendants was captured through Plaintiffs phone system as well as his Carrier. The Defendants initiated seven (7) calls to Plaintiffs residential phone number, calls made in violation of the minimum requirements and regulatory standards of federal and state law. **Id.**

5

The initiation of a call or message (whether or not conversation ensues) made in violation of law, is actionable. [47 U.S.C. §223(a)(1)(C)] [Complt at COUNT II]

> (a) Prohibited acts generally
>> Whoever—
>>> (1) in interstate or foreign communications—
>>>> (C) makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications;. . .

Plaintiff's wife is not a party to the litigation. Plaintiff's wife never gave her phone number to the Defendants simply because she would not want to be called. Neither Plaintiff nor his wife has had any direct relationship with Prevention or Rodale within the last few years. Therefore, even if they did, any subscription, if one ever existed, would clearly have expired.

By having Plaintiffs phone number, the Defendants initiated in the transmission of multiple unwanted calls to Plaintiffs home, most of which were abandoned. [Complt. at ¶¶20 & 31]

The distinction between an Existing Business Relationship and Established Business Relationship, (EBR) described within the New Jersey no-call-law, is clear. However, Plaintiff is unclear if the defendants actually understand that difference demonstrated by their overly-broad, inapplicable defense using the existing/established business relationship.

The defense argues that Plaintiff "severed" that relationship without further explanation. If the defendants understood the New Jersey no-call law, they would have found that explanation there. [Complt. at ¶¶22-24 &45]

Despite what the defense thinks they know about severing a business relationship under the TCPA, there are many factors they do not understand.

6

Granted, under federal law, an EBR still exists even if a consumer is listed on the FTC no-call-list. However, the distinction lies within the New Jersey no-call-law.

> "Existing customer" is defined under N.J.A.C. §13:45D-1.3 to mean;
> "1. A person who is *obligated to make payments to a seller on merchandise purchased;*
> or
> 2. *A person who has entered into a written contact with a seller where there is an obligation to perform, either by the customer, seller or both."*

> The "existing customer" exception in New Jersey would appear to be somewhat more restrictive than the EBR exception under federal law since the New Jersey exception applies only to certain credit transactions whereas the federal EBR exception covers any purchase or transaction which has occurred between a customer and a seller within the 18 months preceding the telemarketing call. [Emphasis added]

> In addition, the definition of *"existing customer" in New Jersey's regulations requires that a customer be making continuing payments to a seller for purchased merchandise or be obligated under a written contract with a seller to have certain obligations performed either by the customer, the seller or both.* [Emphasis added again] ("§13:45D")

Moreover, the Defendants claim that a direct relationship exists between Plaintiff, his wife and Prevention Magazine, thereby permitting such calls, has yet to be proven. Plaintiff intends to seek the existence of that relationship through extensive Discovery and Document Demands.

With the implementation of New Jerseys no-call-law, its purpose was to eliminate the burden of consumers having to tell every telemarketer or business, not to call, subsequently and affirmatively severing any EBR once that consumer registered his/ her phone number with the New Jersey no-call-list.

### POINT I - FAILS FOR SEVERAL REASONS.

In Point I, their Motion argues;

"*Plaintiffs complaint should be dismissed as Plaintiff has failed to state a claim upon which relief can be granted pursuant to the heightened pleading standard set forth by the United States Supreme Court in Ashcroft v. Iqbal.*"

7

## STANDARD OF REVIEW

In ruling on a motion to dismiss under R. 12(b)(6), the Court must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings, to determine whether a cause of action is pled.

Subsequently Plaintiff will address all issues, if not within this opposition, addressed and responded to in Plaintiffs Discovery.

The Motion is one to dismiss. Accordingly, the issue is whether the Complaint states a cause of action. The Complaint contains extensive allegations of wrongdoing [Complt. at ¶¶19-52].

The Complaint clearly states a claim upon which relief can be granted. [Complt. at ¶¶19-52] The TCPA was designed to allow ordinary consumers (not only lawyers) to file suit against those who violate any consumer's privacy rights. There is no "heightened pleading standard" applicable to TCPA complaints. Furthermore, Ashcroft v. Iqbal as well as counsels additional Citations are not on point or material to the specific claims in Plaintiffs complaint as those citations address different violations of the TCPA that carry their own distinct proscriptions.

Defense Counsel further applies a weak foundation for dismissal relying on inapplicable history where Plaintiff effectuated his right to privacy by filing a number of TCPA complaints. Formulated with their inclusion to several federal cases associated with plaintiff, at best, are wrongly applied. Here again, the Defense did not do their homework.

What the defense purposely omitted due to the lack of research in this veiled attempt at fact was that Plaintiff did not file those cases in Federal Court; they were filed in State Court. They were removed to federal

8

court by the relevant defense[s]. They were not tried in federal court as Plaintiff was successful having each case remanded back to state court. The defense kept that fact silent.

The defense makes yet another false statement claiming that "*Plaintiff has been involved in many similar cases, often, though not exclusively, litigating pro se in both state and federal courts.*"

This statement, although odious at best, is not true and should have no bearing on Plaintiff effectuating his right to privacy.

For the foregoing reasons that highlight a weakened defense, Plaintiff respectfully requests that Defendants' Motion to Dismiss be Denied.

### Point II - CAUSE OF ACTION UNDER COUNT I.

The Defendants clearly misread §217. The emphasis for §217 was to demonstrate the failure of \***any**\* "officer, agent, or other person acting for or employed by any common carrier or user".

That Common Carrier or User is Defendant DialAmerica. DialAmerica is a "Common Carrier" or "User" as defined within the Communications Act of 1934. As defined below, DialAmerica is **NOT** a "Telephone Common Carrier";

47 C.F.R. §64.2305(f) Telecommunications carrier:

> A telecommunications carrier is any provider of telecommunications services, except that such term does not include aggregators of telecommunications services (as defined in 47 U.S.C. 226(a)(2)).

Under 47 U.S.C. §217, DialAmerica and its officers are liable for the violations addressed within the Complaint. Plaintiff unambiguously represents that he seeks no relief from the Court for violations of Count I, as it was the basis for Plaintiffs complaint, simultaneously made to the FCC. **[Complt. at Pg. 19]**

9

Therefore, the FCC having recently acknowledging receipt of said Complaint, assigning Case #12-T00846295-1 thereto, a copy of which is attached hereto and made a part hereof as **[EXHIBIT -1]**, Plaintiff concedes that Count I of the Complaint is no longer necessitated and therefore has no objection to dismiss Count 1.

### Point III- A CAUSE OF ACTION UNDER COUNT II.

The calls at issue, described in the Complaint, identify multiple calls in which a spoofed phone number, [201] 257-4065, was identified in Caller ID. A name purposely forged into the Caller ID data-stream displayed "PREVENTION". Plaintiff believes and therefore avers that the deceitful conduct conspired by and between the Defendants and each of them, was to fool (in this case) Plaintiff that the incoming calls originated from a mass-alert county system of some important nature.

The resulting consequence however was that Plaintiff was forced to answer each call showing [201] 257-4065 on caller ID, only to find there was no one at the distant end.

As Plaintiff made an attempt to call back [201] 257-4065 to learn who was trying to reach him, his efforts were met with either a busy signal or simply no connection at all. (Dead air)

As these unwanted calls continued day after day, especially having no one at the distant end, being unable to tell the caller to stop, Plaintiff and his wife could only conclude they were being harassed.

Furthermore; Under 47 U.S.C. §§223(a)(1)(C),(D)&(E), DialAmerica and its officers are liable for the violations addressed within the Complaint.

> 47 USC §223 states in relevant part;
> (a) Prohibited acts generally
> Whoever—

10

(1) in interstate or foreign communications—

(C) makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications;

(D) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(E) makes repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any person at the called number or who receives the communication; or . . . is a prohibited act.

Defendants calls meet the description described above which therein fall under the prohibited acts of 47 USC §223.

As such, Plaintiff has sought relief under 47 USC §223(g) **[Complt. at ¶¶55-60]** and unambiguously represents that he seeks no relief from the Court for violations of Count II.

Plaintiffs Complaint, simultaneously filed with the FCC has been assigned a case number upon which the foregoing violations become the FCC's jurisdiction to deal with. **[EXHIBIT -1]** Id.

Plaintiff concedes that Count II of the Complaint is no longer necessitated to be part of the Complaint and therefore has no objection to dismiss Count II.

### POINT IV - <u>FAILS BECAUSE THERE WAS NO ESTABLISHED BUSINESS RELATIONSHIP UNDER THE TCPA OR THE NEW JERSEY NO-CALL-LAW</u>

In Point IV, the Motion argues the Complaint should be dismissed; that Defendants had an Established Business Relationship (EBR) with Plaintiff's wife; that they legally placed a call to Plaintiff's home to inquire whether

11

2056db5cda72b29a

Plaintiff's wife wanted to renew her current magazine subscription and that Plaintiffs claims are without merit.

Among other things, the defense mentions they "had an existing business relationship with Plaintiffs wife. . ." That is somewhat accurate; co-defendant Prevention **"HAD"** a relationship that **was severed prior to 2010**. **[Emphasis added]**

Defendant DialAmerica ("DialAmerica") did not legally place a phone call on behalf of Defendants Rodale Inc. and Prevention Magazine to Plaintiff's wife. They illegally initiated calls to Plaintiff at his number, not his wife. Counsel fails to mention the client initiated at least six (6) abandoned calls to Plaintiff prior to the last one being a live call. **Id.**

These abandoned calls were absent procedural mandatory requirements described within the Code of Federal Regulations (47 C.F.R. §64.1200 *et seq*) applicable to the abandoned call requirement. But the defendants did not stop making those abandoned calls; instead they continued, knowing that their abandoned calls would harass Plaintiff, failing to meet either federal or state requirements. **Id.**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be Denied.

**Subsection "A".** The Defendants go into their own interpretation of law up to and including application of the Telemarketing Sales Rule, **(TSR)** 16 CFR §310 *et seq*.

This suit is based on the TCPA, its underlying regulations along with New Jersey law which mirrors the TCPA. Plaintiff's suit does not seek adjudication under the TSR. What the Defense fails to disclose to this Court is that a consumer cannot plead violations under 16 C.F.R. §310 unless the

violations cited therein exceed fifty thousand dollars ($50,000.00). Here again, the Defense did not do their homework!

16 C.F.R. is implemented from 15 U.S.C. §6104(a);

> (a) In general, Any person adversely affected by any pattern or practice of telemarketing which violates any rule of the Commission under section 6102 of this title, or an authorized person acting on such person's behalf, may, within 3 years after discovery of the violation, bring a civil action in an appropriate district court of the United States against a person who has engaged or is engaging in such *pattern or practice of telemarketing if the amount in controversy exceeds the sum or value of $50,000 in actual damages* for each person adversely affected by such telemarketing. **[Emphasis added]**

It is likewise unclear why the defense would resort to rely on the technical term "up-sell" as a defense under the definition in 16 C.F.R. S310.2(ee) while Plaintiffs complaint does not and cannot seek relief under the Telemarketing Sales Rule, 16 C.F.R. S310.2(ee).

Point IV is just wrong on the law of the technical term "established business relationship" ("EBR") as the Defendants use it, *ad nauseam*. There can be an existing business relationship even though the "established business relationship" had been terminated with a do-not-call request. (47 C.F.R. §64.1200(f)(4).) The Defendants' cannot rely on an EBR defense because they did not and do not have one.

(47 C.F.R. § 64.1200(f)(4) current as of February 9, 2012

> (f)(4) The term *established business relationship* for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

13

Plaintiff notes however, the law is silent as to any mandatory process in which to sever an EBR. The FCC refers to the term, "at the time the call is made" [47 C.F.R. §64.1200(e)(2)(i)-(iii)] but it does not restrict a consumer the right to make a no-call request prior to any calls, either by verbal notice, by letter or note upon the commencement of any business transaction; i.e. "which relationship has not been previously terminated..."

In the instant matter, the EBR died when plaintiff's wife wrote on the subscription form prior to 2010, not to call ("do-not-solicit"), a request that must stand in perpetuity since the FTC ruling was changed in 2005.

The Defendants blatant defiance of federal and state no-call rules and Law, led to their turning a blind eye to the provisions of the do-not-call improvement act of 2007. **[Complt ¶35]**

Likewise, they disregarded Plaintiffs wife's previous no-call notice.

By failing to update their lists, the Defendants initiated the unlawful calls.

The EBR also died when Plaintiff registered his phone number with the New Jersey Division of Consumer Affairs, effective May 17, 2004.

The defense is seeking some non-existent response in connection with the severing of an EBR by claiming Plaintiff made a 'bald assertion' to that fact, going on to claim there was no severance. How does one prove a negative?

Discovery will shed some light on the Defendants concerns when co-defendant Prevention produces documents and records that support Plaintiffs assertions.

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be Denied.

14

## Subsection "B" of Defendants Motion is procedurally defective

Plaintiff has amply addressed the Violations relevant to N.J.S.A. §56:8-119 *et seq.* In contrast, the Defendants attacked those claims with a misguided understanding of law and forged forward to mislead this court with improper use of (their) interpretation of law.

As defined below, the New Jersey no-call-law defines the EBR in two distinct categories; §13:45D-1.3 **Definitions**

> **"Established customer"** means a customer for whom a seller has previously provided continuing services where the relationship has not been affirmatively or constructively terminated.

> **"Existing customer"** means:
> 1. A person who is obligated to make payments to a seller on merchandise purchased; or
> 2. A person who has entered into a written contract with a seller where there is an obligation to perform, either by the customer, seller, or both.

Although a clear reading of Defendants motion shows an abhorrent attempt to apply the FTC ruling or the application of the TCPA or the application of §13:45D; it is clear they flip-flop between each, hoping that perhaps one defense will eventually stick (to the wall).

With the application of the New Jersey no-call-law being more restrictive then the TCPA, the EBR theory used by the Defendants has no foundation in theory, in fact or otherwise as a basis to a defense, explained as follows;

**POINT:** Plaintiffs number was listed on the New Jersey no-call registry at inception. **[Pltf's Complt. at ¶44-45]** That listing meets the definition of <u>do-not-call</u> and is used for that purpose.

**POINT:** Plaintiffs wife specifically told Prevention "do-not-call" prior to 2010, by writing that on the subscription form, meeting the definition of severing any EBR, a matter ripe for Discovery.

There are two components to this argument. First, there was no EBR because Plaintiffs wife by notation on the magazine subscription told

15

Prevention not to call.   Second, even if there were an EBR, plaintiff's registration with the New Jersey no-call-list terminated that EBR and any right to continue to solicit plaintiff's residential telephone number.

POINT: **Established customer** as defined above does not exist within the instant dispute and cannot be used in any defense since it was "affirmatively or constructively terminated."

POINT: **Existing customer** as defined above, has been improperly used *ad nauseam* by the defense attacking Plaintiffs claims. There is no current obligation for Plaintiff or his wife to make any payments to any seller and the preponderance of evidence is borne upon the defendants to identify that "seller" they rely upon in their defense.

Furthermore, the term; "continuing obligation" is not found within the meaning of Existing Customer. Counsel creatively provides his own interpretation of law by inserting the words "continuing obligation" in his recitation to bolster his misaligned theory of law.

Plaintiff or his wife met their obligation prior to 2010 by advising the Magazine not to call. If, as the defense claims, a "continuing obligation" exists, that "continuing obligation" is to never call Plaintiff. The Defendants did not meet that obligation.

Moreover, Defendants appear to be making an attempt to "hang-their-hat" on what will eventually surface as an excuse that they were not calling *plaintiff* but rather his wife. This attempt will also fail as the decision of who-you-call had already been decided, as follows;

A DNC request applies to a telephone number, not a name. Defendants may not call a number on the DNC list claiming they are trying to reach someone other than the person who made the DNC request.  The FCC addressed

that issue in a similar matter, directly on point, dealing with solicitation calls to Plaintiff's home that were destined for his daughter.

In the *Matter of Consumer.net v. AT&T Corp*., 15 FCC Rcd. 281 (1999), the FCC applied its decision to subsequent TCPA violations, stated in relevant part;

> 1.34)    The foregoing evidence satisfies Consumer.Net's burden of proving that Zelma requested to be placed on an AT&T company-wide do-not-call list prior to August 11, 1997.    Therefore, we find that the October 29, 1997 telephone solicitation by UCS violated Zelma's request.    We thus find that AT&T failed: (1) to apply Zelma's do-not-call request to affiliated entities, in violation of section §64.1200(e)(2)(v) of the Commission's rules; (2) to properly record Zelma's request, in violation of section §64.1200(e)(2)(iii) of the Commission's rules; and (3) to honor Zelma's request for 10 years from the time the request was made, in violation of section §64.1200(e)(2)(vi).    **[AMENDED 2008; TO NEVER EXPIRE]**

> 1.35)    Consumer.Net also argues that AT&T (via its affiliate, UCS) initiated a telephone solicitation on February 24, 1998, in violation of Mr. Zelma's prior do-not-call request.    In response, AT&T contends that the telephone solicitation did not violate Mr. Zelma's do-not-call request because the solicitation was specifically directed to ***Michele*** Zelma (not Richard Zelma). [Emphasis added]

> 1.36)    ***Because we find that the Commission's rules require do-not-call lists to be maintained on a telephone number basis (rather than requiring requests from every individual at a particular residence),*** we conclude that AT&T's February 24, 1998 telephone solicitation violated the Commission's rules and orders.    Both section 227 and the Commission's rules mandate certain obligations to protect the rights of residential telephone subscribers.    Specifically, section §64.1200(e)(2)(iii) of the Commission's rules requires telemarketers to "place the *subscriber's name and telephone number* on the do-not-call list at the time the request is made."

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be Denied.

Plaintiff has no objection against the Court exercising supplemental jurisdiction over the state law claims but leaves that decision to the Court.

17

POINT V <u>INVASION OF PRIVACY BY INTRUSION INTO SECLUSION - COUNT VI.</u>

Plaintiff repeats and re-alleges in relevant part, his response to Point III (Count II) above.

Plaintiff concedes that Count VI of the Complaint is no longer necessitated and therefore has no objection to dismiss Count VI.

### POINT VI - <u>MUST FAIL - PLAINTIFF HAS ADEQUATELY PLEAD CLAIMS AGAINST DEFENDANT CONWAY. CORPORATE OFFICERS ARE LIABLE FOR THEIR TORTS</u>

### ARGUMENT

Defendants' argument on Point VI is whether Arthur Conway is liable as a corporate officer. The defense argues that Plaintiff did not plead any factual allegation against Conway. Their Motion claims that Plaintiff must plead plausible factual allegations regarding Conway's individual liability.

That statement is has no merit with respect to TCPA claims. Arthur Conway owns, manages and Directs DialAmerica Marketing. Arthur Conway manages the whole operation.

The complaint seeks to impose liability on defendant Conway, not because he is the owner of Defendant DialAmerica, but because he participated in and controlled the bad acts of the corporation. The issue is well settled law. A person is liable under the theory for their personal acts leading to the violations. It makes that person liable for their own acts, and not because of their title or regardless of whether they are a stockholder. In a TCPA case; *Covington & Burling v. Int'l Mktng. & Research, Inc.,* 2003 TCPA Rep. 1164, 2003 WL 21384825 (D.C. Super. Apr. 16, 2003) (citing *Vuitch v. Furr*, 482 A.2d 811, 821 (D.C. 1984) (a corporate officer may be held liable for acts of the corporation "when there is an act or omission by the officer which logically leads to the inference that he had a

18

share in the wrongful acts of the corporation which constitute the offense."). The Covington & Burling court found that "As the only corporate officers of Fax.com, they set company policies and oversee day-to-day operations. Therefore, they are clearly involved in the business practices that led to Covington receiving 1,634 unsolicited faxes in a five day period." Id. at 6.

Other courts have held similarly in TCPA cases. *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001) (defendants "were the "guiding spirits" and the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.")

Plaintiff intends to show among other things, negligence on the part of Arthur Conway as owner and / or director of the defendants business. While "gross negligence" is a fairly high standard, if it is met, a director is liable personally for his act or omission. See, e.g., *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir. 1993); *Francis v. United Jersey Bank*, 87 N.J.,15, 432 A.2d 814 (1981); *Hoye v. Meek*, 795 F.2d 893 (10th Cir. 1986).

As in *Int'l Mktng. & Research, and American Blastfax,* Arthur Conway was the driving force behind his employees, to develop, acquire and maintain subscribers for DialAmericas magazine division as well as that of co-defendant Prevention. Likewise, Conway stood to gain from royalties, profits, commissions or other instruments of financial gain associated with the solicitations. [See also N.J.S.A. §14A:2-1 as amended]

> Individual officers of a corporation are liable for their own tortious
> conduct described as the "general rule" in 3A; Fletcher,

19

2056db5cda72b29a

Fletcher Cyclopedia of the Law of Private Corporations (perm. ed. rev. vol. 2002), which further sets forth as follows:

> An individual is personally liable for all torts which that individual committed, notwithstanding the person may have acted as an agent or under directions of another. This rule applies to torts committed by those acting in their official capacities as officers or agents of a corporation. It is immaterial that the corporation may also be liable. Under the responsible corporate officer doctrine, if a corporate officer participates in the wrongful conduct, or knowingly approves the conduct, the officer, as well as the corporation, is liable for the penalties. The person injured may hold either liable, and generally the injured person may hold both as joint tort-feasors.

Corporate officers are liable for their torts, although committed when acting officially, even though the acts were performed for the benefit of the corporation and without profit to the officer personally.

Corporate officers, charged in law with affirmative official responsibility in the management and control of the corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part that warrants inferring such consent or approval.

A corporate officer or director may not seek shelter from liability in the defense that he or she was only following orders. Personal liability attaches, regardless of whether the breach was accomplished through malfeasance, misfeasance or nonfeasance. Id. at §1135. In addition, an important distinction should be noted: "[p]ersonal liability for the torts of officers does not depend on the same grounds as 'piercing the corporate veil,' that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate

20

Case 2:12-cv-00256-DMC-JBC  Document 9  Filed 02/21/12  Page 21 of 22 PageID: 161

organization. The true basis of liability is the officer's violation of some duty owed to the third person which injures such third person." **Id.**

These allegations include:

That Arthur Conway refused to comply or acknowledge that Plaintiff severed any EBR with him, his company or co-defendant Rodale.

That Arthur Conway, instructed or directed his employees to initiate calls to plaintiff with the intent to solicit Plaintiff's wife using Plaintiff's telephone number, a number they were specifically not to call. **Id.**

That Arthur Conway failed or refused to register his company or undertake to register his company with the New Jersey Division of Consumer Affairs for telemarketing purposes.

Had Arthur Conway registered his company as he was supposed to do, he would have Plaintiffs number listed as a do-not-call.

Arthur Conway has alleged that he registered his company DialAmerica with the New Jersey Division of Consumer Affairs. Until Discovery is completed, that statement is pure speculation at this time.

That Arthur Conway accepted a contract from co-defendant Prevention to initiate calls into New Jersey on their behalf.

That Arthur Conway knew or should have known that Plaintiffs phone number was registered with the federal and state no-call-list, but nonetheless, instructed or directed his employees to initiate the unlawful calls to plaintiff in a campaign for co-defendant Prevention. **Id.**

That Arthur Conway knew or should have known his call centers were initiating in abandoned calls absent the requisite abandoned call announcement. **Id.**

21

That Rodale Inc. d/b/a Prevention Magazine has taken no action to stop Arthur Conway and DialAmerica from their continued wrongdoing.

These allegations tie Arthur Conway, DialAmerica and Rodale Inc. d/b/a Prevention Magazine to all the core events alleged in the Complaint. The standard for pleading sufficient facts to state a cause of action has been amply met here.

These allegations are more than adequate to give Arthur Conway, DialAmerica and Rodale Inc. d/b/a Prevention Magazine reasonable notice of the nature of the claims against them.

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss Conway be Denied.

CONCLUSION

Whether defendants Arthur Conway, DialAmerica and Rodale Inc. d/b/a Prevention Magazine are exempt from the TCPA by the defenses raised, is a question of fact that cannot be decided at this early stage of the proceedings. Preliminary Discovery suggests that Arthur Conway, DialAmerica and Rodale Inc. d/b/a Prevention Magazine are individually implicated in the core events of this case.

For all of the foregoing reasons, the Motion to Dismiss must be denied.

Respectfully submitted,

Richard M. Zelma
PLAINTIFF, *pro se*

Dated: February 17, 2012

22