UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
**Tel:** 201 767 8153

Richard M. Zelma
Plaintiff

Vs.

Art    Conway    [Individually],
**(VOLUNTARILY DISMISSED)** and
DialAmerica Marketing Inc., and
Rodale Inc., a/k/a Rodale Press, d/b/a
Prevention Magazine and Prevention
Magazine and John Does' (1-5) and
ABC Corporations'(1-5); each acting,
individually, in concert, or as a group.

Defendants'

REMOVED FROM THE SUPERIOR
COURT OF NEW JERSEY,
LAW DIVISION, BERGEN COUNTY;
DOCKET No. BER- L-10306-11
Civil Action

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
Civil Action No.:
2:12-cv-00256    (DMC)(JAD)

1st AMENDED COMPLAINT FOR
STATUTORY DAMAGES, TREBLED
DAMAGES,    PUNITIVE DAMAGES
and    PERMANENT    INJUNCTIVE
RELIEF

## I.    INTRODUCTION

**1**        Plaintiff, Richard M. Zelma, residing at 940 Blanch Avenue,

Norwood, New Jersey, by way of First Amended Complaint as against

Defendants' says as follows:

**2**        This suit was brought pursuant to applicable authorities; 47

U.S.C. §227 *et seq*; and N.J.S.A. §56:8-119, which prohibit unwanted and

continued unsolicited sales calls made by telephone. Such calls were

directed at Plaintiffs residential phone line causing undue harassment,

1

substantial and emotional distress, abuse, annoying and alarming his household with multiple calls as well as repeated abandoned calls.

## II. PARTIES

**3**    Richard M. Zelma (hereinafter, "Plaintiff[s]"), is a natural person and senior citizen, residing at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey, 07648. Plaintiff and his wife (Barbara) have lived at that residence for over 35 years and at all times subscribed to telephone number [201] 767 8153 and 8154. At times material herein, Plaintiffs wife hereinafter shall be referred to as ("Plaintiff or Plaintiffs Wife".)

## III. FACILITATOR DEFENDANT - DIALAMERICA

**4**    Defendant DialAmerica Marketing Inc. ("DialAmerica" or "Defendant[s]") is a New Jersey for-profit corporation with its principal place of business located at 960 MacArthur Blvd, Mahwah, NJ 07495.

**5**    Upon Plaintiffs information, knowledge and belief, DialAmerica owns and operates telephone call-centers located throughout the United States.

**6**    Upon Plaintiffs information, knowledge and belief, Defendant DialAmerica initiates autodialed calls to solicit consumers through telemarketing for its clients.

**7**    DialAmerica transacts or has transacted business in this District and in relevant part, initiated and originated the calls defined and described herein, to Plaintiffs residence.

2

**8** DialAmerica was previously served at; United States Corporation Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle DE 19808.

## IV. FACILITATOR DEFENDANT - ART CONWAY VOLUNTARILY DISMISSED

## V. CALLER DEFENDANT - RODALE INC, d/b/a PREVENTION MAGAZINE

**9** Upon information and belief, Defendant Rodale Inc, d/b/a Prevention Magazine, (hereinafter, "Prevention" or "Defendant[s]") is the benefactor to the calls at issue, initiated by, from or through Defendant DialAmerica and under contract and approval with Defendant Conway.

**10** Prevention is located at 733 3rd Ave, New York, NY 10017-3204, with Corporate Headquarters located at 33 East Minor Street Emmaus, PA, 18098. Prevention may be served at CT Corporation System, 1515 Market ST, Team 1, Suite 1210, Philadelphia PA, 19102.

**11** The violations described herein were caused by the acts, omissions and/or failures of Prevention, its officers or employees, acting within or under the scope of their employment or control.

## VI. JURISDICTION AND VENUE

**12** The facts giving rise to this complaint had their primary effect in the County of Bergen. This Court has specific jurisdiction over

3

the Defendants under authority of 47 U.S.C. §§227(b)(3)(B)&(c)(5), and N.J.S.A. §56:8-119.

**13**     **The** Defendants' and each of them engaged in substantial, continuous and systematic activities by repeatedly initiating unwanted calls into New Jersey, within this County, to Plaintiff, a resident whose phone numbers are registered on the Federal and States no-call list and the controlling jurisdiction in which the violations occurred.

## VII.  ORIGINAL FACTS SUSTAINED

**14**     Plaintiffs' phone numbers, [201] 767 8153 and [201] 767 8154 were listed with the Federal Trade Commission's national do-not-call list since commencement, effective October 1, 2003. [16 C.F.R. 310 *et seq*]

**15**     Plaintiffs' phone numbers, [201] 767 8153 and [201] 767 8154 were placed on the NO-CALL list administered by the State of New Jersey since commencement, effective May 17, 2004.  [N.J.S.A. §56:8-119]

## VIII.  ADDITIONAL FACTS SURFACING SINCE FILING THE ORIGINAL COMPLAINT

**16**     During the pendency of the original pleading in District Court, Plaintiffs wife located documents relevant to the subject dispute which dramatically enlarge the relevant prosecutorial facts herein, defined and described below. (See: **Amended Cert. of Barbara Zelma,**

Pg. 2, ¶7)

**17**    Plaintiff and his wife accumulated frequent flyer miles with Delta/ Continental Airlines, (Hereinafter; "SkyMiles") **[SkyMiles is not a Defendant in this matter. Plaintiff does not anticipate bringing them in]**

**18**    On or about August 2008, Plaintiffs wife received a mailing from "SkyMiles", regarding an offer for free magazine subscriptions. **EXHIBIT 1**

**19**    Plaintiff's wife chose two (2) magazines and specifically noted on the application to place us on their no-call-list. **EXHIBIT 2**

**20**    A SkyMiles representative responded shortly thereafter, with a confirming letter dated August 14, 2008, to acknowledge the no-call request, attached herewith and made a part hereof as **EXHIBIT 3.**

**21**    On or about April 2010, Skymiles sent Plaintiffs wife a notice that frequent flyer miles would soon be expiring, indicating a last offer to redeem free magazine awards, attached hereto and made a part hereof as **EXHIBIT 4**.

**22**    Included with its various materials, SkyMiles included what appeared as a mailing list request with a no-call selection box. Identified as relevant to Defendant Rodale, plaintiff checked the box requesting not to receive phone calls, a copy of which is attached hereto and made a part hereof as **EXHIBIT 5**.

5

**23**     Subsequently, all provided forms from SkyMiles were filled out with specific notations 'not-to-call" and mailed back to them.

**24**     In relevant part, by making this no-call request, Plaintiffs wife severed the established business relationship (EBR) with SkyMiles and Rodale or any of the Defendants or related entity for the purpose of telemarketing and expected SkyMiles to share that request with their other partners as well.

**25**     Plaintiffs notice not to call, meets the FCC's definition, defined under the terms of 47 <u>C.F.R.</u> §64.1200 (f)(5);

> (5)  The term *established business relationship* for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

**26**     Plaintiff does not have and did not have a subscription agreement in 2008 or 2010 with either of the named defendants, nor does one currently exist.

**27**     Furthermore, Plaintiff did not pay nor was requested to pay Defendants or SkyMiles for any magazine subscription.

**28**     The free magazine offer was exclusively between Plaintiff and SkyMiles.

**29**     Any contract for the free magazine was between SkyMiles and the defendants, <u>not</u> Plaintiff or his wife. [**Emphasis added**]

**30**     Following the expiration of SkyMiles free 2010 Prevention Magazine offer, Plaintiff did not receive any further Skymiles offers.

## IX.  ALLEGATIONS
## Common Enterprise Business Operation

**31**     Commencing on or about November 9, 2011, Defendants willfully or knowingly initiated, assisted with, caused to initiate and ratified the initiation of at least seven (7) unsolicited autodialed calls to Plaintiff's residential telephone line, [201] 767 8153.

**32**     Plaintiff confirmed in every live call, the callers were indeed DialAmerica, calling under contract for Prevention Magazine to renew Plaintiffs subscription.

**33**     In the course of initiating their calls, the defendants violated the provisions of the 2010 Truth in Caller ID Act by willfully manipulating Caller ID, providing the name "PREVENTION" for the name of the calling party in each call they initiated.

**34**     In the course of receiving the defendants' calls, Plaintiffs Caller ID displayed [201] 257 4065 as the originating number, later found to be a non-responsive non-working number, willfully, knowingly and purposely spoofed by the defendants to make it impossible by Plaintiff to stop future calls.

35      The Defendants' and each of them engaged in the prohibited use of an Automated Dialing and Announcement Device (ADAD) or an Automatic Telephone Dialing System (ATDS) to initiate the calls at issue and did so absent prior express written consent from Plaintiff.

36      The defendants' and each of them manufactured a defense to deliberately circumvent telemarketing laws by falsely claiming an unsupportable fact that plaintiff had an established business relationship with them that was not previously severed.

37      Plaintiff nor his wife have no established business relationship nor an existing business relationship with the named Defendants as that term is defined under 47 U.S.C. §227 et seq, N.J.S.A. §56:8-119, and 47 C.F.R. §64.1200(f)(5).

38      Material to the within dispute, at no time did Plaintiff nor his wife contract with Defendants to order magazines.

39      The defendants' repeated calls evidence there are no procedures in place to maintain a consumer's no-call request.

40      The Defendants' and each of them, are therefore liable along with the currently unnamed Doe Defendants, under the terms of 47 U.S.C. §227 et seq, the regulations promulgated thereunder and N.J.S.A. §56:8-119.

## X. VIOLATIONS OF LAW

41      The Facilitator Defendants call centers have Automated

Dialing and Announcement Devices. (ADAD)

**42**     The Facilitator Defendants call centers have Automatic Telephone Dialing Systems (ATDS)

**43**     The limitations on the foregoing devices have been defined and proscribed under (Restrictions on use of telephone equipment), codified under 47 U.S.C. §§227(a)(1) - (5).

**44**     The Defendants used automated dialing and announcement device (ADAD) or Automatic Telephone Dialing System (ATDS) to solicit Plaintiff and did so in violation of 47 USC §227(b)(1)(B).

**45**     The Defendants used those systems and/ or devices and initiated calls to Plaintiffs home as more detailed below, from November 9 through November 19, 2011, the exact amount to be determined through continuing discovery.

**46**     On or about November 9, 2011, in violation of a previously written no-call request and breaching their own (previous) 'do-not-call' form, **Id.**

**47**     The defendants' and each of them initiated a call to Plaintiffs residential phone line [201] 767 8153, then, prematurely abandoned it, devoid of any abandoned call announcement. [47 C.F.R. §64.1200(a)(7)(i)(A)]

**48**     On or about November 10, 2011, in violation of a previously written no-call request and breaching their own (previous) 'do-not-call'

form, the defendants' and each of them initiated another call to Plaintiffs residential phone line [201] 767 8153 which was answered by a live person. Plaintiff told the defendants live caller not to call again and place him on their no-call-list. (*supra*)

49     On or about November 11, 2011, in violation of a previous no call request, the defendants' and each of them initiated another call to Plaintiffs residential phone line [201] 767 8153, and again prematurely abandoned, devoid of any abandoned call announcement. (*supra*)

50     On or about November 15, 2011, in violation of a previously written and live no call request, the defendants' and each of them initiated another call to Plaintiffs residential phone line [201] 767 8153, and again prematurely abandoned, devoid of any abandoned call announcement. (*supra*)

51     On or about November 17, 2011, in violation of a previously written and live no call request, the defendants' and each of them initiated another call to Plaintiffs residential phone line [201] 767 8153 again, prematurely abandoned, devoid of any abandoned call announcement. (*supra*)

52     On or about November 18, 2011, in violation of a previously written and live no call request, the defendants' and each of them initiated another live call to Plaintiffs residential phone line [201] 767 8153 upon which Plaintiff told the defendants caller not to call again

10

and place him on their no-call-list. (*supra*)

**53**     On or about November 19, 2011, in violation of a previously written and live no call request, the defendants' and each of them initiated another live call to Plaintiffs residential phone line [201] 767 8153 whereby an argument ensued between Plaintiff and the defendants caller as she would not accept his no-call-request. (*supra*)

**54**     The Defendants' caller, evidently misadvised of the law, falsely claimed or attempted to deceive Plaintiff, stating that; *"federal regulators believe consumers whose phone numbers are listed on the federal and state no-call list may still want to receive telemarketing calls that offer discounted services!"*

**55**     Plaintiff was informed, believes and therefore avers that the November calls cited above were initiated for the purpose of encouraging the purchase of property, goods or services and therefore constitute the practice of *telemarketing* as that term is defined at 47 C.F.R. §64.1200(f)(7).

**56**     Each of the Defendants calls violated FCC regulations generally prohibiting autodialed telemarketing calls to residential lines, set forth under 47 C.F.R. §64.1200(a)(2) as promulgated under the TCPA at 47 U.S.C. §227(b).

**57**     The defendants' initiated and delivered at least seven (7) calls to Plaintiffs residential phone line, [201] 767 8153, commencing

November 9 through November 19, 2011, from spoofed telephone number [201] 257 4065, in violation of 47 <u>C.F.R.</u> §64.1601.

**58**     The Defendants' and each of them violated the Truth in Caller ID Act of 2010. [47 <u>U.S.C.</u> §227(e) *et seq*] [As amended, December 22, 2010] [47 <u>C.F.R.</u> §1601] by knowingly blocking, cloaking, spoofing, deprogramming, manipulating or shrouding the true identity from which such calls were initiated.

**59**     A substantial number of the Defendants' unsolicited calls were prematurely abandoned, thereby preventing Plaintiff from making a do-not-call request. 47 <u>C.F.R.</u> §64.1200(a)(6)

**60**     By initiating in multiple abandoned calls, the Defendants violated the provisions of the Abandoned Call Requirement, 47 <u>C.F.R.</u> §64.1200(a)(7)(i)(A)

**61**     The premature abandoned calls were absent the requisite 2 second greeting in each such call, providing "the defendants name", phone number and the reason for the call. **<u>Id.</u>**

**62**     At all times relevant, the Defendants' and each of them, purposely, willfully or knowingly initiated the calls at issue to Plaintiff; caused the making of those calls to Plaintiff with intent to solicit Plaintiff and succeeded delivering said calls to Plaintiff which were purely commercial in nature, to benefit the Defendants' own financial gain.

63      At all times relevant, the Defendants' and each of them, failed to register as telemarketers with the New Jersey Division of Consumer Affairs. [N.J.S.A. §§56:8-121(a)(&(b)]

64      The defendants' calls are described as an "up-sell", a violation and prohibited act defined and described in the New Jersey no-call law. (N.J.S.A. §56:8-119)

65      During each live call, Plaintiff made a no-call request to the defendants' callers which was ignored, violating Plaintiffs rights under the TCPA. (*supra*)

66      The defendants' and each of them do not have any business relationship with Plaintiff pursuant to the provisions of the New Jersey no-call-law, its underlying regulations or the FTC's definition of an Established Business Relationship.

67      The defendants' and each of them made all the unlawful and prohibited calls at issue, caused undue harassment, substantial emotional distress and abuse by annoying and alarming Plaintiffs household with multiple calls made between November 9 and November 19, 2011, as defined and described above.

68      Defendant DialAmerica produced a defective Written Policy which failed to meet minimum regulatory standard requirements defined and described herein below. **[EXHIBIT 6]**

**69**      Specifically, the Commission's rules require that persons or entities engaged in telephone solicitations must have a Written Policy available upon demand for maintaining a do-not-call list, must inform and train any personnel engaged in telephone solicitations in the existence and use of the list, and must record the request and place the subscriber's name and telephone number on the do-not-call list at the time the request is made. 47 C.F.R. § 64.1200(e)(2)(i)–(iii). (*1992 TCPA Order*, 7 FCC Rcd at 8765-66, ¶ 23.) In addition, the Commission's rules require that a do-not-call request be honored for a period of ten years from the date of the request. 47 C.F.R. §64.1200(e)(2)(vi).

**70**      Defendants'    DialAmerica    and    Prevention    clearly demonstrated their failure to comply with the underlying proscriptions of the TCPA by ignoring Plaintiffs previous written no-call-request from SkyMiles as well as a no-call-request made to the live reps in the recent calls.

**71**      Defendants' seven (7) telemarketing calls as described herein were intentional and consistent with Defendants' pattern and practice and not the result of error, mistake or accident. The calls were initiated without Defendants having created and effectively implementing a Written Policy meeting the minimum standards set forth at 47 C.F.R. §64.1200(d), as promulgated under 47 U.S.C. §227(c)(6) and therefore

constitute seven (7) separate and distinct violations of FCC regulation 47 C.F.R. §64.1200(d).

72    Defendant DialAmerica failed to implement procedures that would have prevented them from making repeated calls or knowingly refused to comply with Plaintiffs previous no-call-request.

73    The Facilitator Defendant provided substantial assistance or support to initiate outbound telemarketing calls to Plaintiff to induce the purchase of goods or services sold by co-Defendant, Prevention Magazine.

74    **The do-not-call improvement act of 2007.** The provisions of the do-not-call improvement act state; *"Sellers and telemarketers have to update their call lists,. . . delete all numbers in the National Registry from their lists, at least every 31 days."*

75    Both Defendants failed to register with the New Jersey Division of Consumer Affairs with their intent to solicit into the State, subsequently failing to purchase the New Jersey no-call-list of consumers who do not want to be called, subsequently violating the New Jersey no-call-law. [N.J.S.A. §56:8-119 *et seq*]

76    Plaintiff made numerous attempts to reach someone at the spoofed Caller ID number, [201] 257 4065 to stop the repeated annoying calls, all to no avail.

77    Facilitator Defendants actual calls were initiated and subsequently originated from Omaha Nebraska, not New Jersey as they would have Plaintiff believe.

15

**78** Caller Defendant Prevention was aware or consciously avoided knowing that the co-defendants made multiple and prohibited calls to Plaintiff.

**79** Facilitator Defendants provided substantial assistance or support to their client Prevention Magazine, by, among other things, engaging in the conduct set forth above, even though Prevention knew or consciously avoided knowing that DialAmerica was engaged in violations of the TCPA.

## XI.  THIS COURT'S POWER TO GRANT RELIEF

**80** 47 U.S.C. §227(b)(3)(A) empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any future violation of any provision of law enforced by the FCC.

**81** Plaintiff will suffer continual harassment along with substantial emotional distress and abuse that will annoy and alarm his household if Defendants' and each of them are permitted to continue to engage in their questionable practices, if Permanent Injunctive Relief is not granted.

## XII.  Truth in Caller ID Act of 2010.

**82** In all instances, Caller Defendant Rodale, was aware or consciously avoided knowing that the facilitator defendant made telemarketing calls that transmitted or caused to be transmitted caller names and numbers that did not identify the actual telemarketer

initiating those calls on behalf of the seller.

**83**      Throughout the time frame of the subject calls, Caller Defendants were aware or consciously avoided knowing that the facilitator defendant made telemarketing calls to Plaintiff that transmitted or caused to be transmitted the caller[s] name, "PREVENTION" along with a spoofed phone number identified as [201] 257 4065, a number that was unable to reach the defendants.

**84**      The Defendants' and each of them violated the Truth in Caller ID Act of 2010. [47 U.S.C. §227(e) *et seq*] [As amended, December 22, 2010][47C.F.R.§1601] by knowingly blocking, cloaking, spoofing, deprogramming, manipulating or shrouding the identity from which such calls were initiated.

**85**      The seven (7) telemarketing calls described herein were accompanied by the transmission of spoofed Caller ID data which did not provide an active return telephone number where Plaintiff or any other telephone subscriber could call and make a do-not-call request, nor did it provide the calling party's real name, registered with the State Corporation Commission in the State the entity is registered [47C.F.R.§1601] which therefore constitutes seven (7) separate and distinct violations of 47 C.F.R. § 64.1601(e), as promulgated under the authority of 47 U.S.C. 227(c)(6).

**86**      Accordingly, Plaintiff has a cause of action against the

Defendants' and each of them and hereby seeks relief in actual, statutory and punitive damages as well as Permanent Injunctive Relief pursuant to the foregoing and as against each of the defendants.

### XIII.  COUNT ONE
### DISMISSED

### XIV.  COUNT TWO
### DISMISSED

### XV.  COUNT THREE
### ENGAGING IN PROHIBITED ACTIVITY
### PURSUANT TO N.J.S.A. §56:8-119

**87**    Plaintiff repeats and re-alleges and incorporates by reference Paragraphs one through eighty above as if set forth in full at length.

**88**    The Defendants and each of them initiated multiple phone calls to Plaintiffs residential telephone line, in a campaign to up-sell Plaintiff with the extension of a magazine subscription.

**89**    The New Jersey no-call-law, codified at N.J.S.A. §56:8-119 defines "Telemarketing" as a plan, program or campaign which is conducted by telephone to encourage the purchase or rental of, or investment in, merchandise, but does not include the solicitation of sales through media other than a telephone call."

**90**    The New Jersey regulations, codified at §13:45D-3.9, define a no-call request as:

> (d) Sellers shall maintain a list of names and telephone numbers of customers who have requested not to receive telemarketing sales

calls. A seller that receives, either directly from the customer or indirectly from a telemarketer or other source, a request from an existing customer not to receive telemarketing sales calls from that seller, shall remove the customer from its calling list and take other necessary affirmative steps to cease telemarketing sales calls to the customer by or on behalf of the seller within 30 days of the customer's request.

**91**    Plaintiff informed, directed and instructed the defendants and each of them by and through their affiliation with SkyMiles, that Plaintiff was not to be solicited, a request made on or about August 2008. **Id**.

**92**    The Defendants and each of them initiated seven (7) calls to Plaintiff with the intent to up-sell and encourage the purchase of Defendants products, goods or services.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff statutory, punitive or actual damages for each of the unlawful calls material to Count Three.

### XVI.  COUNT FOUR
### Statutory Damage Award For Violations
### promulgated under 47 U.S.C. §227 *et seq*

**93**    Plaintiff repeats and re-alleges and incorporates by reference Paragraphs one through ninety-two above as if set forth in full at length.

**94**    Defendants' calls to Plaintiff and the acts and omissions as to those calls described herein were deliberate and conscious acts or omissions and were initiated with the cooperation, knowledge, and consent of both Defendants.

**95**    Defendants are aware of the TCPA and knew or should have known that their calls to Plaintiff described herein would constitute multiple violations of 47 U.S.C. §§227(b) & (c) and the FCC regulations promulgated thereunder.

**96**    Plaintiff informed, directed and instructed the defendants and each of them by and through their affiliation with SkyMiles, that Plaintiff was not to be solicited, a request made on or about August 2008. **Id.**

**97**    The Defendants ratified the acts and omissions of each other.

**98**    The Defendants and each of them initiated at least seven (7) phone calls to Plaintiffs residential telephone line, on the dates defined above, using an automated dialer that failed to meet minimum regulatory announcement procedures. **Id.**

**99**    The Defendants and each of them initiated seven (7) calls to Plaintiff on the dates defined above, with the intent to up-sell Plaintiff and encourage the purchase of Defendants products, goods or services

and did so in violation of Plaintiffs multiple notices not to call. (47 C.F.R. §64.1200(a)(2))

**100** The Defendants seven (7) calls to Plaintiff on the dates defined above failed or willfully ignored Plaintiffs notice not to call by his registration with the Federal and State no-call-list. 47 C.F.R. §64.1200(d)(3)

**101** The seven (7) telemarketing calls on the dates defined above, were accompanied by the transmission of Caller ID data which did not provide a return telephone number where Plaintiff or any other telephone subscriber could call and make a do-not-call request, nor did it provide the calling party's name, which therefore constitutes seven (7) separate and distinct violations of 47 C.F.R. §64.1601(e), as promulgated under the authority of 47 U.S.C. §227(c)(6). **Id.**

**102** Subsequently, the Defendants are liable to Plaintiff for damages promulgated under authority of 47 U.S.C. §§227(b) & (c) (6) *et seq*, defined as follows;

> **(a).** Seven (7) separate and distinct violations of 47 C.F.R. §64.1200(a)(2)
>
> **(b).** Seven (7) separate and distinct violations of 47 C.F.R. §64.1200(d)(3).
>
> **(c).** Seven (7) separate and distinct violations of 47 C.F.R. §§64.1601(e)(1) & (2)

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff statutory, punitive and actual damages for each of the unlawful calls material to Count Four for a total of $10,500.

### XVII. COUNT FIVE
### Award for Statutory Trebled Damages For Willful or Knowing Violations of the TCPA, 47 U.S.C. §227(b)(3)(C)

**103** Plaintiff hereby incorporates all of the allegations of paragraphs one through one hundred two, as if set forth in full at length.

**104** Plaintiff previously informed, directed and instructed the defendants and each of them by and through their affiliation with SkyMiles, that Plaintiff was not to be solicited, a request made on or about August 2008.

**105** By initiating such telemarketing calls, Defendants' violations were done 'willfully' or 'knowingly' as these terms are defined at 47 U.S.C. §312 and in FCC decisions.

**106** Defendants' §227(b) violations involving the calls described herein were willful or knowing as those terms are defined in the Communications Act of 1934 and administered by the FCC. Therefore it is within the Court's discretion to award Plaintiff up to three times the

available statutory damages described in Count FIVE as prescribed under 47 U.S.C. §227(b)(3).

**107**   Accordingly, the willful intent to violate this act, with full knowledge ignoring a no-call request and with direct knowledge of their prohibited acts, Defendants' are liable to plaintiff under the TCPA for treble the $500 statutory damage amount for each such violation as per Count five to a trebled amount of $31,500.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff statutory trebled damages of $31,500 for each such violation material to Count Five

### XVIII. COUNT SIX DISMISSED

### PRAYER FOR RELIEF
**WHEREFORE**, Plaintiff prays that this Court:

(a) Award Plaintiff punitive damages at the discretion of the Court for up to five times the actual damages for each such violation material to the unlawful calls material to Count Three

(b) Award Plaintiff punitive damages at the discretion of the Court for up to five times the actual damages of Count Four; award statutory

damages for each such violation material to the separate and distinct violations described in Count Four

(c) Award Plaintiff statutory, trebled damages for each such violation material to Count Five

(d) Award Plaintiff the cost of this litigation pursuant to N.J.S.A. §56:8-19

(e) Award Plaintiff attorney fees if applicable, pursuant to [N.J.S.A. §56:8-19 *et seq*]

(f) Award Plaintiff Permanent Injunctive Relief pursuant to 47 U.S.C. §227(b)(3)(A)

(g) Award Plaintiff any Other Equitable Relief the Court deems justified, stopping the aggravated harassment defined and described herein.

(h) Plaintiff reserves the right to supplement this prayer, in the event additional violations surface through continuing discovery.

(i) Plaintiff waives any award in excess of $74,500.00, (Seventy Four Thousand Five Hundred Dollars), excluding costs and /or legal fees.

24

Respectfully submitted,

By: _____

RICHARD M. ZELMA, *pro se*

Dated: October 8, 2012

## RULE 4:5-1 CERTIFICATION

Pursuant to the requirements of R. 4:5-1, I certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated. No other parties should be joined in this action.

By: _____

RICHARD M. ZELMA, *pro se*

Dated: October 8, 2012

## NOTICE TO ATTORNEY GENERAL
## FOR THE STATE OF NEW JERSEY

**NOTICE IS HEREBY GIVEN** to the Office of Attorney General for the State of New Jersey pursuant to N.J.S.A. §56:8-20 of the within claim based upon violations of the Consumer Fraud Act and the New Jersey no-call law.

I hereby certify that contemporaneous with the filing hereof, a copy of this pleading has been mailed to the aforesaid Office of

25

Attorney General for the State of New Jersey at the New Jersey State Division of Law, Hughes Justice Complex, 25 W. Market St., P.O. Box 112, Trenton, NJ 08625-0112.

RICHARD M. ZELMA, *pro se*
PLAINTIFF
Norwood, NJ 07648
Dated: October 8, 2012

## NOTICE TO THE FEDERAL
## COMMUNICATIONS COMMISSION

**NOTICE IS HEREBY GIVEN** to the FCC under authority of 47 U.S.C. §227 *et seq*, made via Form 1088E to the within complaint, based upon violations of the Telephone Consumer Protection Act. (TCPA)

I hereby certify that contemporaneous with the filing hereof, a copy of this pleading has been electronically mailed to fccinfo@fcc.gov the Office of the Federal Communications Commission, Consumer & Governmental Affairs Bureau, Consumer Complaints, 445 12th Street, SW Washington, D.C. 20554.

RICHARD M. ZELMA, *pro se*
PLAINTIFF
Norwood, NJ 07648
Dated: October 8, 2012

# EXHIBIT 1

**Rewards Processing Center**
P.O. Box 30488, Salt Lake City, UT 84130

```
***********************
*  URGENT NOTICE      *
*  YOUR SKYMILES®     *
*   ARE EXPIRING.     *
***********************
```

August 8, 2008

Mrs. Barbarah Zelma
940 Blanch Ave
Norwood, NJ 07648-1712
IIl..l..l.l.l..l.l..l.l..ll.l..ll.l.l.l.l.l.l.l..l.l.l..l

Dear Mrs. Barbarah Zelma:

A records review indicates that you have Delta SkyMiles® which are expiring. Redeem them now for your choice of magazine Rewards for absolutely **NO CASH COST.**

**Important: Orders must be postmarked by 09/19/08.** Simply indicate your selections on the reverse side and return in the envelope provided.

Redeeming your miles for magazines is just one of the ways Delta works to make the SkyMiles program more valuable to you. In addition to this offer, you can earn miles through one of **more than 100 of Delta's SkyMiles partners,** which include hotels, car rental companies, telecommunication services, restaurants, retail, financial, insurance and realty services. Delta also gives you the opportunity to buy, gift, or transfer those extra miles you may need. Visit delta.com/skymiles for more details. All Delta SkyMiles program rules apply. To review the rules please visit www.delta.com/memberguide.

This opportunity to redeem your expiring miles for your favorite magazine Rewards will end on September 19, 2008. Act quickly and reply now.

Thank you and enjoy your selections.

Sincerely,
*Virginia Wilson*
Program Director

P.S. - You can also redeem your expiring miles online by visiting www.magsformiles.com/41292. Please be sure to act before the September 19, 2008 deadline.



EXHIBIT

1

# EXHIBIT 2

Please fill out the reverse and return in the reply envelope provided.

**▲ DELTA**
# SKYMILES ®

|  |  |
|---|---|
| Expiring Mileage Balance: | (AS OF 07/01/08) 14,799 |
| SkyMiles Account #: | 2238797118 |
| Date of Notice: | 08/08/08 |
| Respond by: | 09/19/08 |

8/8/08

Mrs. Barbarah Zelma
940 Blanch Ave
Norwood, NJ 07648-1712

LMK

*Please Put me on your DoNoTCAll List.*
*Thank you,*
*Barbara Zelma*

For official
use only.



**EXHIBIT**

**2**

# EXHIBIT 3

**▲ DELTA**

**SKYMILES**

Rewards Processing Center
P.O. Box 30488, Salt Lake City, UT 84130

August 14, 2008

Mrs. Barbarah Zelma
940 Blanch Ave
Norwood, NJ 07648-1712

Dear Mrs. Barbarah Zelma:

As a Delta SkyMiles® Member, your privacy is very important to us. You recently noted a request not to be called or solicited by our partners. Although Skymiles would have no reason to directly solicit you, we've passed along your request to our partners who participate in various Skymiles programs.

Please allow up to 72 hours for your request to take effect.

We appreciate your loyalty as a Delta SkyMiles® member.

Sincerely,
Virginia Wilson
Program Director

**EXHIBIT**

EXHIBIT 4

Case 2:12-cv-00256-DMC-JBC  Document 22  Filed 04/17/13  Page 34 of 38 PageID: 382

≡

**NOTICE TO DELTA AIR LINES RESIDENTS OF NEW JERSEY**

**OFFICIAL AWARDS REDEMPTION NOTICE**

April 16, 2010

040
Barbarah Zelma
940 Blanch Ave
Norwood, NJ 07648-1712

# ATTENTION VALUED NEW JERSEY SKYMILES MEMBER

Dear Barbarah Zelma:

A records review of expiring mileage balances indicates that you currently have miles which are expiring soon.

As a New Jersey resident, your last chance to redeem your miles for these magazine Awards is May 30, 2010. Remember, failure to complete a qualifying activity in your account by September 30, 2010 will result in the expiration of your miles. For more information about qualifying mileage expiration extending activities visit delta.com/skymiles.

Be sure to redeem the miles you've earned by recording your selections on the back of your Awards Claim Certificate. Then return in the envelope provided, but **send NO cash, NO check and NO credit card information.** These magazine Awards have no cash cost. But you must reply before May 30, 2010. Please reply promptly.

Sincerely,
Virginia Wilson
Program Director

P.S.  Redeem your expiring miles for magazines online by visiting **www.magsformiles.com/51632.** Please be sure to act before the May 30, 2010 deadline.

© LSR-1



EXHIBIT
4

# EXHIBIT 5

**IMPORTANT:** When you provide information on this side of the form, please check the corresponding box on the other side.

**ADDRESS CORRECTION:** My correct address is printed below:

☒ Mr. ☒ Mrs.
☐ Ms.
☐ Miss

Name (First) RICNARD         (Last) ZELMA

Address 940 BLAWEN AVE         Apt. PH

City NORWOOD         State N.J.         Zip 07648

Effective Date: AUGUST 2010

Mailing List Requests:
☒ We occasionally make our customer names available to carefully screened organizations whose products and services may interest you. Check here if you'd rather not receive information from other companies.
☒ We may occasionally contact you by phone about Rodale books and magazines. Check here if you'd rather not receive phone calls.
☐ We will occasionally mail you information about Rodale books and magazines that may be of interest to you. Check here if you'd rather not receive this information.

EXHIBIT

5

# EXHIBIT 6



## Do-Not-Call Policy

### I. CORPORATE DO NOT CALL (DNC) POLICY:

a. DialAmerica, Inc. has adopted and adheres to the policies described below to comply with the Federal Trade Commission's ("FTC") and Federal Communications Commission's ("FCC") regulations, The Direct Marketing Association's ("DMA") Ethical Guidelines, and if applicable, state Do Not Call Laws.

b. DialAmerica, Inc. checks telephone numbers on our calling lists against the Do-Not-Call (DNC) lists that we obtain from various sources, or refer to exemptions such as the established business relationship.

    i. We obtain the national DNC list each month (or every 30 days).

    ii. We check against state DNC lists consistent with state-mandated timetables.

    iii. We check against the DMA's telephone preference service ("TPS") each month. In addition, to remove wireless numbers from our database we obtain the DMA wireless block identifier and wireless ported numbers lists on a bi-monthly basis (or every 15 days).

    iv. We will also remove from our calling lists the telephone number of those individuals who submit requests directly to us. Consumers may submit DNC requests by phone (1-800-984-8959), email (CustomerService@dialamerica.com), online (http://www.dialamerica.com), or mail to: DialAmerica, Inc., Customer Service, 960 Macarthur Blvd, Mahwah, NJ, 07495. Such requests are recorded in our database within three (3) business days of receipt. NOTE: Federal regulations require companies to honor DNC requests within 30 days.

    v. We retain company-specific DNC requests for a minimum of 5 years or longer in states where the retention standards go beyond 5 years. If you move or change your telephone number your request may be deleted. If you wish to reestablish your DNC request, please contact us at the information above.

    vi. To fully implement sellers DNC requests it may take up to 30 days.

c. If you have questions about our DNC policy, please contact us during normal business hours. Questions about our company's DNC policies should be directed to our Government Affairs department (governmentaffairs@dialamerica.com) to the address listed above or by phone (1-800-531-3131 ext. 2305)).

We have trained our employees that are engaged in telephone marketing on these policies and procedures and we require our employees to follow them at all times. We have a policy of disciplining and we will discipline any employee who fails to abide by these policies and procedures.

This policy is reviewed on an ongoing basis to make sure the information is compliant with any changes in state or federal do-not-call laws.

**EXHIBIT**

6